# THE WILLIAM COOK.

(*District Court, S. D. New York.* June 15, 1882.)

1. **CHARTER-PARTY—SUPPLIES—LIENS.**

    Where the charterers of a vessel agree to pay all the expenses of supplying her, and a person furnishing supplies is notified by the owners of the terms of the charter-party and forbidden to credit the vessel, he cannot acquire any lien upon her for supplies afterwards furnished.

2. **SAME.**

    The libellant, having such notice, arranged with the charterer for weekly payments. *Held*, that subsequent supplies must be deemed furnished upon the personal credit of the charterer only.

3. **SAME—MASTER—WHEN MAY BIND CHARTERED VESSEL.**

    It is only in circumstances of distress in a foreign port, or where repairs or supplies are necessary to enable the vessel to complete her voyage or reach the hands of the owners, that the master has an implied authority from the owners to bind the ship contrary to the known terms of a charter-party

Libel *in rem* for Supplies.

On the sixteenth day of May, 1877, the owners of the steam-boat William Cook, of this city, chartered her to Josiah Pollock from June 2 to October 1, 1877, to be used in the excursion business on the Hudson river, the East river, and Long Island sound; the charterers to have possession, and to pay all expenses of manning and supplying her. Pollock took possession of the boat on the first day of June, and used her only in excursions to Rockaway, obtaining coal from the libellant's yard at Hoboken, New Jersey. The agent of the owners seeing her go to this yard, presumably for coal, went there, and also to the office of the libellant in Hoboken, and gave notice of the terms of the charter, and forbade supplies being furnished upon the credit of the vessel. This notice was conveyed to the president of the company, who afterwards went with his collector to the office of Pollock, in New York, and arranged with him to pay for the coal in weekly payments. Pollock paid for the coal up to the twenty-fifth day of June only. On July 7th possession of the vessel was retaken by the owners, for default in the payment of the hire according to the terms of the charter-party, and this libel was afterwards filed *in rem* to recover for the coal furnished her by the libellant from June 25th to July 7th.

*Abbett & Fuller,* for libellants.

*Benedict, Taft & Benedict* and *S. H. Valentine,* for claimants.

BROWN, D. J. The libellant is in this case precluded from alleging that the coal was furnished upon the credit of the vessel. The evi-

dence is clear and convincing that he had express notice, from the owners, of the charter-party and of its terms, and that neither they nor the vessel should be held for supplies, and that thereupon the libellant arranged specifically with Pollock, the charterer, for weekly payments. Upon such facts he could not lawfully charge the ship, and the coal must be held to have been supplied upon Pollock's personal credit. *Beinecke v. The Secret,* 3 FED. REP. 665; *The Norman,* 6 FED. REP. 406. After such notice it would be a gross violation of justice and equity to permit a material man to continue to furnish supplies and charge the ship therefor, which would be virtually at the expense of the owners, who had no interest in the supplies and had carefully used all possible means of avoiding liability. *The Columbus,* 5 Sawy. 487. There are doubtless circumstances in which the known obligation of the charterer to pay for supplies would not prevent a lien on the ship, as where a vessel is in a foreign port in distress, with no means of obtaining supplies necessary to complete her voyage and reach the hands of her owners, and where express notice not to credit the ship had not been given. In such cases the interests of her owners and the necessities of the case might raise an implied authority in the master from the owners to obtain necessary supplies on the credit of the ship, notwithstanding the charterer's known obligation to pay for them. *The Monsoon,* 1 Spr. 37; *The City of New York,* 3 Blatchf. 187, 188.

In this case there is nothing in the circumstances to raise any such implied authority to bind the ship; but express notice to the libellant to the contrary. Even as respects necessaries it has long been settled that a master's authority in a foreign port to bind the ship or her owners is limited to his instructions, when those instructions are known to the persons furnishing money or supplies. *Pope v. Nickerson,* 3 Story, 465, 477; *The Woodland,* 7 Ben. 110, 119.

The William Cook, though she crossed the river at Hoboken, New Jersey, for coal, was in no substantial sense away from her home port. The supplies were not furnished in any condition of distress, or to complete any unfinished voyage, or to bring her home within the reach of her owners; but they were furnished exclusively in reference to her daily excursions from this port to Rockaway, for the sole benefit of her charterer. The coal was not even obtained by the authority or direction of the master, who alone has implied authority in a foreign port to bind the ship for necessary supplies; for he testified that he ordered none of the coal, and had nothing to do with procuring it; all the receipts for coal were signed by the mate only.

Her trips being made from this city, it would seem that the charterer had sent the steamer across the river to Hoboken for no other purpose than to obtain coal and water of the libellants, and that, not for any voyage from that port, but simply preparatory to her trips to be afterwards made from this city to Rockaway.

It may be doubted whether the rule giving a maritime lien in a foreign port for necessary supplies to complete a voyage could be properly applied to supplies thus furnished for such a purpose; but without regard to this point I am clearly of opinion that the supplies in this case cannot be held to have been lawfully furnished upon the credit of the vessel, but only upon the personal credit of the charterer.

The libel should, therefore, be dismissed, with costs.