## Case No. 4,268.

The ECLIPSE.

[3 Biss. 99; [2] 4 Am. Law T. Rep. U. S. Cts. 187.]

District Court, E. D. Wisconsin. Aug. Term, 1871.

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reported by Josiah H. Bissell, Esq.; and here reprinted by permission.]

Finches, Lynde & Miller, for libellants.
Carys & Cottrill, for respondents.

MILLER, District Judge. It is contended by respondents' proctors that $97.31, balance of account against the Ludington is included in the last note, and that a receipt at the foot of said account, dated December 14, 1870, of payment by Selleck's note, payable June 1, 1871, is evidence of that fact.

The evidence is, that on December 14, 1870, the parties made a final accounting of all accounts, and in their presence the appropriation of the payment of $700 was made. And I am satisfied from the explanation given, that the account against the Ludington was paid out of that money. The receipt was open to explanation, and I think it may be fairly considered that the correct credits were made, leaving the balance against the Eclipse.

When Selleck gave the last note the libellants expressed their satisfaction of his pecuniary circumstances at that time. The supplies were furnished for the schooner Eclipse and charged to her by name, without regard to the ability of Selleck, the owner.

There is no doubt, from the facts in evidence, that the supplies furnished were necessary for the vessel. And I am satisfied that they were furnished by the libellants on her credit. The owner resided in an adjoining state, some distance from Chicago. The schooner was as to the libellants a foreign vessel. There was no agreement between libellants and the owner, when the order was made for the supplies, or when they were being furnished, that the owner should be exclusively liable for payment. The order was given by the owner for supplies to the vessel, which were furnished and charged to the vessel, without further inquiry or agreement.

It is not pretended that the master had funds wherewith to pay libellants for the supplies. In the case of The Kalorama, 10 Wall. [77 U. S.] 204, it is decided that it is no objection to the assertion of an admiralty lien against a vessel for necessary repairs and supplies to her in a foreign port, that the owner was there and gave directions in person for them, the same having been made expressly on the credit of the vessel. The Grapeshot. 9 Wall. [76 U. S.] 129; The Guy, Id. 758; The Lulu, 10 Wall. [77 U. S.] 192.

It is contended on the part of respondents that libellants waived their maritime lien on the vessel by accepting the note of the owner.

On the 14th of December, 1870, the parties made a final accounting, and the balance of the account against the Eclipse remaining unpaid was $780.27, for which the note was given by Selleck, payable on the first day of June, following. It is expressly testified by Dunham, one of the libellants, that the note was not accepted in payment of the account against the schooner. Selleck paid $700 in full of his small private account and of the Lewis Ludington account, and reduced the account of the Eclipse; and he stated that he could not pay more at that time, and gave the note. There is no evidence tending to contradict the testimony of Dunham, that the note was not accepted in satisfaction of the balance of the account against the Eclipse. Without such evidence it is fair to presume that libellants would not waive their maritime lien, by the acceptance of a promissory note payable nearly six months ahead. It is not to be presumed that a party would release a higher security upon acceptance of a less; taking a less security does not necessarily waive a higher.

From the non-payment and return of the first note, it may not be inferred that libel-

lants consented to waive their maritime lien by accepting the last note or either of the notes. In the case of Ramsay v. Allegre, 12 Wheat. [25 U. S.] 611, it did not appear that the negotiable note of the respondent had been given up, or surrendered, at the hearing in the district court, and for this reason the decree dismissing the libel was affirmed. This position is sanctioned in the opinion in the case of Andrews v. Wall, 3 How. [44 U. S.] 568. And in the opinion in The St. Lawrence, 1 Black [66 U. S.], on page 532, the court remark: "Has this lien been forfeited or waived? It does not appear to have been forfeited or waived, under any provision in the New York statute, nor was it waived upon the principles of maritime law, by the acceptance of Graham's notes, unless the claimants can show that the libellants agreed to receive them in lieu of, and in place of, their original claim. The notes in this instance have been surrendered and were filed in the proceedings in the district court. And the language of the court in the case of Ramsay v. Allegre, 12 Wheat. [25 U. S.] 611, and of Judge Story in commenting upon that case in 3 How. [44 U. S.] 573, necessarily imply, that if the notes had been surrendered the party would have a right to stand upon his original contract, and to seek his remedy in the forum to which it originally belonged, as fully as if the notes had never been given." It also will appear from the statement in the case of The Guy, 9 Wall. [76 U. S.] 758, that it should be made to appear by the claimant that the acceptances were taken in absolute payment. Nor does the pendency of an action at common law, for necessary repairs or supplies bar a libel in the admiralty. The Custer, 10 Wall. [77 U. S.] 204–218. In Dike v. The St. Joseph [Case No. 3,908], the libel claimed contribution from the vessel on a general average, for which bonds had been given. The court decided that though there may be a remedy at law, yet that does not take away the jurisdiction in admiralty. The maritime law in cases of material men, where it gives a tacit hypothecation or lien, gives the lien upon the vessel as an auxiliary to the personal security of the owner. It allows the party to give credit because it is for the general benefit of navigation and trade. The Nestor [Case No. 10,126]; The Chusan [Id. No. 2,717].

In the case of The Betsey and Rhoda [Case No. 1,366], a seaman accepted the promissory note of the owner for his wages; the note not being paid, he returned it and libelled the vessel; the court held that such a note will not be an extinguishment of the claim for wages, nor of the lien of the seaman against the ship, unless it is distinctly stated to him at the time that such will be the effect, and the note is accompanied by some additional security or advantage to the seaman as a compensation for his renouncing his lien on the vessel. Also in the case of The Harriet [Id. 6,098], the libel was sustained after suit had been brought at law on a note accepted by a material man for supplies returned into court, it being held that the acceptance of the note did not extinguish the maritime lien. Harris v. The Kensington [Id. 6,122].

In Moore v. Newbury [Case No. 9,772], it is held that a note given by the owner for supplies to his vessel did not extinguish the lien. The same decision is made in the case of The Active [Id. 34]. Also, in Page v. Hubbard [Id. 10,663], and in Raymond v. The Ellen Stewart [Id. 11,594].

And in Carter v. Byzantium [Case No. 2,473], it is held that a lien for repairs and supplies furnished at Norfolk, Virginia, on a ship owned in Maine. is not lost by the creditor taking bills of exchange on one of the owners, which bills were produced to be surrendered or cancelled. See, also, Baker v. Draper [Id. 766].

It seems to be well settled that the party claiming a maritime lien, must either return or offer to return the note or other security accepted by him, or bring it into court and surrender it to be cancelled, as is done in this case, before the lien will be enforced by decree in the admiralty.

In decreeing for libellants, this court follows its own decisions heretofore made in cases involving these questions.