## THE WESTOVER.

### LOGEMANN et al. v. THE WESTOVER.

(District Court, E. D. Wisconsin. August 20, 1896.)

**MARITIME LIENS—STATE STATUTES.**

Liens created by state statutes for repairs or supplies to a vessel at her home port merely operate to render rebuttable the presumption imposed by maritime law that credit is given to the owner personally. This lien is not implied, but must rest upon a mutual contract which contemplates a credit upon the res. Express terms to that effect are not in all cases essential, but may be implied, when clearly pointed out by circumstances.

: This is a libel in rem for a boiler and other repairs furnished at the home port of the steamer, and heard upon exceptions filed by the claimant.

The grounds of exception are insufficiency of facts stated to constitute a lien or confer jurisdiction. The substance of the allegations in question is as follows: The steamer Westover is a vessel of over 10 tons burden, "duly licensed and enrolled, and employed in the business of commerce and navigation upon the lakes and navigable waters of the United States," and lying at and "hailing from the port of Milwaukee," in this district. The libelants, Logemann Bros., are machinists and boiler makers at Milwaukee, and upon request of one H. J. Pauly, who represented himself "to be the real owner of the said steamer Westover, and to all intents and purposes the ostensible owner of said steamer," for which a marine boiler was required, and in the belief that such representations were true, made a written proposal, dated January 31, 1895, addressed to said H. J. Pauly, to build for him a marine boiler and fittings and fixtures described, to be delivered on the street at their shop by April 1, 1895, "for $2,400 balance, and your [his] 2 horizontal rigs of engines and boilers; payable $800 April 15, '95, $800 Oct. 15, '95, $800 April 15, '96." This was accepted by a letter to them of the same date, and signed "H. J. P." Neither letter mentions the steamer Westover, nor the purpose of the work. Delivery was made about June 1, 1895, in accordance with extension of time, at the place stated, "to be placed on board said steamer," and the boiler was subsequently so placed. The property to be received in exchange was delivered, but no money has been paid. The libelants further performed extra work, in May, 1895, and September, 1895, about the construction of the boiler of said steamer, at the request of the owner, to the amount of $826.17; also unpaid. It is further alleged that the libelants, at the time of making the contract and performing the work, believed the representations of H. J. Pauly that he was the owner of the steamer, but that the fact is that his father, John H. Pauly (who now appears as claimant), was and is the owner, and said H. J. Pauly was his duly-authorized agent in ordering the said repairs; that the libelants furnished the boiler and all the work "with the understanding that the same was to be placed in and on board said steamer"; that all the same was necessary to make the vessel seaworthy, and enable her to engage in commerce and navigation; that in such performance libelants "relied upon the credit of H. J. Pauly," supposing his representations of ownership to be true, and would not have given him credit except as actual owner; but that no exclusive credit was given to him as such supposed owner; but "these libelants relied as well upon the credit of said steamer Westover"; and all the work was furnished "both upon the credit of said steamer Westover, which received the benefit of said work, as well as upon the credit of her actual owner." Thereupon a lien is asserted under section 3348 of the Revised Statutes of Wisconsin. The claim and exceptions are filed by said John H. Pauly, as sole owner of the steamer, and there are no other claimants or interveners.

M. C. Krause, for libelants.
Van Dyke, Van Dyke & Carter, for claimant.

SEAMAN, District Judge (after stating the facts as above). The facts stated in this libel would clearly present a case for personal recovery against the owner at common law. Whether they are sufficient—aside from technical objections which may be cured by amendment—to sustain a libel in rem is a question of considerable interest, and in some of its features not directly met by any of the authorities which have come to my attention. It relates solely to the existence of a lien attaching to the res or vessel itself, and not to the interest of any particular owners. It is also squarely raised between the material man and the owner as contracting parties, and

is, therefore, relieved of any question of injury to third parties through a secret lien, or of the creation of a lien for supplies ordered by a charterer, as discussed instructively in several recent cases. The maritime lien or privilege for services, repairs, and supplies furnished to a vessel is founded upon the fact of their necessity for the prosecution of her voyage or service, and upon the presumption that they cannot be obtained on the personal credit of the owner, when remote from his residence, and that they are furnished upon the credit of the vessel. Therefore the doctrine is established in the admiralty law that the privilege is applicable only for such services or supplies furnished at foreign ports, and that no maritime lien exists when they are furnished at the home port of the vessel, as the law then infers the presence of the owner, and that credit is given upon his ordinary responsibility. The St. Jago de Cuba, 9 Wheat. 409; The Lottawana, 21 Wall. 558. But it is also well settled that liens upon vessels may be created by state legislation, so long as congress does not interpose to regulate the subject, their enforcement being exclusively in the admiralty jurisdiction of the courts of the United States, and through this method liens declared by a state statute for repairs or supplies to a vessel at her home port obtain recognition in the admiralty. The Lottawana, supra; The J. E. Rumbell, 148 U. S. 1, 13 Sup. Ct. 498; The Samuel Marshall, 6 U. S. App. 389, 4 C. C. A. 385, and 54 Fed. 396; The Electron, 74 Fed. 689. This enforcement is, however, strictly limited to contracts or claims which are clearly maritime. There must be presented all the "characteristics of a maritime lien," which include the indispensable requirement that the supplies were furnished on the credit of the vessel. The Samuel Marshall, 6 U. S. App. 389, 4 C. C. A. 385, and 54 Fed. 396; Lighters Nos. 27 and 28, 15 U. S. App. 236, 6 C. C. A. 493, and 57 Fed. 664; The Electron, supra. The Wisconsin statute in this regard (section 3348, Rev. St.) declares the liability of every vessel "navigating the waters of this state" for "debts contracted by the master, owner, agent or consignee thereof * * * on account of labor done, or materials furnished * * * for * * * repairing, fitting out, * * * or equipping such ship, boat or vessel." The libel is defective, as it does not show that the steamer "is used in navigating the waters of this state," which is essential to invoke the application of the statute (The Galena v. Beals, 5 Wis. 91; The James H. Prentice, 36 Fed. 777), but this defect may be obviated by amendment. The objection is also urged that there is no allegation that the debt was contracted "on account of labor done or materials furnished" in and for the vessel, as demanded by the statute. It is true that the contract under which the boiler was made does not refer to the vessel, and provides for its delivery on land, and not on the vessel, which might raise a further question under this point were it not for the other claims clearly within the statutory description. But all the exceptions are general, and do not, therefore, present these objections.

The inquiry of main importance is this: Are facts stated in the libel which show a contract clearly made upon the credit of the vessel? The fact of such credit as foundation for the claim

is indispensable for its enforcement as a lien in admiralty, under the authorities above cited and the general current of later decisions. It must be a credit to the thing,—the res,—and not merely a credit to the owner because of his interest in the res.   As the maritime law imposes the presumption that credit is given to the owner personally when present at a foreign port, and always at the home port, and as the statute operates to create a lien which is enforceable only according to the rules of admiralty, the effect is to make that presumption rebuttable, and thus place the domestic lien upon an equal footing with foreign liens, if the credit is so given in fact. This lien is not implied, but must rest upon a mutual contract which contemplates a credit upon the res.   I am of opinion, however, that this understanding may be implied where it is clearly pointed out by circumstances, and that express terms to that effect in the contract are not in all cases essential to a lien, as counsel for claimant contends, and some of the authorities seem to indicate.   In The Kalorama, 10 Wall. 204, it is declared that the presence of the owner will not destroy such credit to the vessel as may be necessary; and that agreement for such credit may be implied.   See, also, The James Guy, 1 Ben. 112, Fed. Cas. No. 7,195, affirmed 5 Blatchf. 496, Fed. Cas. No. 7,196, and 9 Wall. 758; The Eclipse, 3 Biss. 99, Fed. Cas. No. 4,268; The Robertson, 8 Biss. 180, Fed. Cas. No. 11,-923.   I find no substantial fact alleged in this libel tending to show that the credit of the boat was contemplated by the parties in their contract, unless it can be implied from the representations by the agent of his ownership; and, in the absence of circumstances or statements pointing in that direction, such fact may be equally consistent with a personal credit out of reliance upon such interest. Indeed, the latter inference is strongly suggested by the other allegations.   Clearly, this fact alone is insufficient to overcome the presumptions raised by the maritime law, supplemented by the silence of the written contract.   The statement that the libelants intended and gave credit to the vessel is their mere conclusion is onesided, and is of no value for determining what was the contract.   As remarked in The Columbus, 14 C. C. A. 524, 67 Fed. 555, referring to a similar allegation:  "The material inquiry is, not whether the libelant himself may have contemplated a claim of lien, but whether a lien was created by or resulted from the mutual understanding of the parties, and the services rendered in pursuance of it."

I am therefore constrained to sustain the exceptions.   The meritorious character of the claim as presented, aside from these technical features, cannot be allowed to establish a lien contrary to the settled requirements of maritime law.   But, as there may be facts not stated through which the lien may be preserved, leave will be given to amend within 20 days, if so advised; otherwise the libel to stand dismissed, without costs.