---

## Case No. 28.

### The ACME.

[7 Blatchf. 366.][1]

Circuit Court, E. D. New York.　June 18, 1870.[2]

MARITIME LIENS—PRIORITIES—ADVANCES.

1. Where B., not specifically shown to be an American citizen, but a merchant doing business in New York, purchased a British vessel, and caused the title to her to be taken in the name of C., a British subject, residing in New York, and C., having no beneficial interest in the vessel, executed, at the request of B., a mortgage on her to M., to secure a loan of money made by M. to B., and the vessel and the mortgage were registered at Nassau, a British port: Held, that, in a suit in rem, in admiralty, brought at New York, by H., against the vessel, to recover for advances made by him in Havana, on the credit of the vessel, subsequently to the making of the loan by M., neither C. nor B. making any objection, M. was entitled to have his claim under the mortgage allowed out of the proceeds of the vessel, after the payment of the advances made by H., and that enquiry into the legality of the transactions between C., B. and M., on grounds of public policy, was irrelevant.

2. On the facts of this case, H. was held to have a lien on the vessel for his advances, on the ground that they were made on the credit of the vessel and of B., and a lien prior to the lien of the mortgage to M.

3. Where an advance is made to relieve a vessel in a straightened condition in a foreign port, the presumption is that such advance is made on the credit of the vessel. This is especially true where the party making the advance has not had such business relations with either master or owners as to render it probable that large sums would be advanced upon credit without security.

4. Where the question to be determined is, whether credit for an advance was given to the owner of a vessel or to the vessel herself, the transaction is to be viewed differently from the case of an advance made by A. to B., on a request by C. to A. to make the advance, on the account of C. In the former case, the testimony of the party making the advance, as to his intent, in making it, in respect to giving

[1][Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]
[2][Affirming decree of district court in The Acme, Case No. 27.]

credit, may be considered, while, in the latter case, it is not to be considered.

5. The fact that the party making an advance draws a draft therefor on the owner of the vessel, does not necessarily deprive him of his lien on the vessel.

[In admiralty. Libel in rem to recover the amount of advances made by M. A. Herrera & Co. to the master of the bark Acme; George H. Millington, a mortgagee thereof, appearing as claimant. The mortgagee's claim was rejected by the district court, and a decree entered for the libelants. (Case No. 27.) The claimant appeals. Decree sustaining the lien of both libelants and claimant.]

Robert D. Benedict and Charles Donohue, for libellants.

Charles M. Da Costa, for claimant.

WOODRUFF, Circuit Judge. The case made by the libellants is by no means free from doubt. They assert a lien upon the barque Acme, for advances made in Havana, for the discharge of a bottomry bond payable within three days after her arrival, and for certain supplies furnished at that port. The actual or beneficial owners of the barque were Messrs. Baetjer & De Vertu, of the city of New York. The necessity for the advances, and that the master and owners had no other credit in Havana, and that the advances were actually made, is entirely clear upon the evidence, and is, in truth, not questioned by the counsel for the claimant.

The only claimant and only party appearing in the suit is a mortgagee of the vessel, claiming under a mortgage executed and delivered by the party holding the legal title to the vessel, to secure a loan made to Baetjer & De Vertu long before these advances by the libellants were made. By consent of the libellants and the claimant, the barque was sold by the marshal, and the proceeds were brought into court, and the suit proceeded for the determination of the claims of the libellants and the claimant, as between themselves. Upon the ground that the claimant has no title, by virtue of his mortgage, which the court ought to recognize, his claim was wholly excluded in the district court, and he was even denied the surplus of the proceeds after satisfaction of the alleged lien of the libellants. The claimant being thus excluded, and all others having, of course, been defaulted, a decree was made in favor of the libellants, for the amount of their claim thus standing uncontested, without an examination and decision of the question whether the facts proved establish a lien or not. The Acme, [Case No. 27.]

The proof is, that the barque was a British vessel, and that, being such British vessel, Messrs. Baetjer & De Vertu purchased her, and caused the title to be transferred, by bill of sale, to Henry James Creighton, a British subject, a merchant, described as of Halifax, Nova Scotia, but then residing in New York, and the claimant's mortgage was executed by the latter. Creighton had no beneficial interest in the vessel, but consented to take the title, and afterwards to execute the mortgage, on the request of Baetjer & De Vertu. The vessel was registered at Nassau, in the British island of New Providence, and there the mortgage was also registered. The vessel was built in Baltimore, and by what course of proceedings she had ceased to be an American vessel prior to her purchase by Baetjer & De Vertu, the proofs do not show, further than that she was owned by one Patterson, and that it is testified she was a British vessel when so purchased. Whether Baetjer & De Vertu are or are not American citizens is not specifically proved. That question is left to the inference warranted by the fact that they are merchants doing business in New York and New Orleans.

If I were prepared to say that, under these circumstances, the mortgagee could have no standing in court as against any one and that his mortgage is a nullity. I must affirm the decree made below, upon that sole ground. But I am not satisfied that, as against the mortgagor, or against Baetjer & De Vertu, at whose request he made the advance and received the mortgage, he is not entitled to the benefit of his mortgage; and certainly, in a suit in which he sets up his mortgage and claims such benefit, and in which neither the mortgagor nor the beneficial owners appear or make any objection, his claim should be allowed. If no one who has any title to the vessel or any lien thereupon objects to his title, it is not the duty of the court to enquire whether, under the laws of England, a mortgage would be sustained where the title was in a British subject having no beneficial interest therein, or whether it is against the policy of our laws to entertain a claim made under a mortgage given in that condition of the title. If all persons having any title, legal or beneficial, make default, setting up no adverse claim founded in illegality or otherwise, and no party having a lien on the barque assails the title of the mortgagee, it would seem that his mortgage should warrant his claim. This would, most clearly be true, if such mortgage is good as against the mortgagor and the beneficial owners; for, in such case, he stands in court rightfully contesting the alleged lien of any other party.

It is not claimed on the part of the mortgagee, that, if the libellants, by their advances, obtained a lien upon the barque, such lien is to be postponed to his mortgage; nor is it denied that such lien, duly existing, has priority over all the owners and parties interested in the vessel, whether mortgagee, holder of the legal title, or beneficial owners. Without, therefore, discussing the ground

upon which the decision was placed below, I prefer to enquire whether the libellants have such a lien. And this question confessedly depends upon the answer to another—Was the credit given by the libellants to the vessel, or was the advance made on the credit of Baetjer & De Vertu?

The determination of this question does not depend upon any principles or rules of law peculiar to the law maritime or to courts of admiralty. It is purely a question of fact. There are cases which hold that, where advances are necessary and are made, still no lien is thereby created, because the advances are made on the credit of the master or of the owners, and other cases which hold that a lien is created because such advances are made upon the credit of the vessel. What circumstances, viewed as matter of evidence, warrant the inference that the advance was made not in reliance upon the vessel but on the responsibility of the master or owners, and, on the other hand, what circumstances indicate the converse, is often the subject of discussion, but the matter of fact to be determined is, to whom the credit was given; and, on the ascertainment of that fact, the question of lien or no lien is at once solved.

It must be conceded, that the history of the advance now in question is such, that a finding either way upon this question of fact could not be regarded as without evidence. Indeed, as above already intimated, I regard it as very doubtful. But I regard it as a just presumption, where an advance is made to relieve a vessel in a straitened condition in a foreign port, that such advance is made on the credit of the vessel. This is especially true where it appears that the parties making such advance have not had such business relations with either master or owners as to render it probable that large sums would be advanced upon credit without security.

On the 15th of June, 1866, Baetjer & De Vertu wrote to the libellants, apprising them that they had requested the master of the Acme, then about to arrive in Havana, to consign her to them, stating, among other things, that the master had signed a bottomry bond in Antwerp, payable in Havana, and adding: "Please pay the same for our account, at best possible rates of exchange, use the freight money for this purpose, and draw on us, either at New York, or on our New Orleans house, for the balance, at usual sight, which draft will be promptly protected; or if it suits you better, we can make you a remittance from here, to cover the deficit, either in a banker's draft on Paris, or in Havana money. It will depend on the rate of exchange at which the bottomry bond will be payable with you, which way is the most advantageous for us." To this letter the libellants replied, on the 30th of June: "We beg to acknowledge rec't of your valued favor of 15th inst., the contents of which are attentively noted. The business of the Acme will receive our best attention as soon as she arrives." On the 13th of July, the Acme arrived at Havana, and, according to the testimony of one of the libellants, the master, on her arrival, called upon the libellants and requested them to take up the bottomry bond, "for account of the vessel and owners, within three days, so as to avoid all unnecessary expenses." The libellants paid the bond, and made some further advances for expenses of discharging, ship's stores, procuring cargo for New York, clearing, pilotage, &c., and collected the freight due on cargo to Havana, &c.

On the 14th of July, the libellants advised Baetjer & De Vertu of the arrival of the vessel, and said: "With respect to our re-imbursement, we think the best way will be for us to draw on you." On the 25th of July, they wrote to Baetjer & De Vertu, stating that they had paid the principal and premium of the bond, leaving a question of commissions unsettled, and that, by the next opportunity, they should value on them for the approximate amount which would be due. On the 28th of July, they again wrote, advising Baetjer & De Vertu that they had drawn for $7500, at 60 days, the "approximate amount of your indebtedness to us for paying bottomry bond for Acme, which we place to your credit at 26 per cent., at in., $5550, craving your entries to agree." The draft arrived and was accepted by Baetjer & De Vertu. On the 8th of September, the cargo of the Acme having been procured, the libellants wrote, advising Baetjer & De Vertu that she had left for New York, adding: "We now enclose disbursements acct. of said vessel, amounting to $887.06, and extract of acct. closed by our draft, at 60 days, for $1145.35, which please protect, and we hope will prove correct." The accounts enclosed were an account headed: "Disbursements of Brit. Bk. Acme, Capt. D. A. Wenke," which contained items for sundry expenses of discharging, port charges, advances for ship stores, &c., &c., $887.06; and an account headed: "Dr. Messrs. Baetjer & De Vertu, in account current with M. A. Herrera & Co., Cr.", in which account were charged all their advances for the payment of the bottomry bond, ship's disbursements, commissions, &c., and in which were credited the inward freights received in Havana, and the two drafts above-mentioned, showing an exact balance of the debits and credits. On or about the 14th of September, the second draft arrived and was presented. Acceptance of it was declined on the ground that Baetjer & De Vertu had then failed. Neither draft has been paid.

Upon the face of the actual transaction thus disclosed, the indication is very strong that it was the intention of the libellants to give a personal credit to Baetjer & De Vertu, and that they did so in fact, without any reliance upon the vessel, or any expectation or

thought of acquiring a lien thereon. But these indications are not conclusive in any such sense as precludes explanation. Nothing has been done in reliance thereon which should prevent proof of the actual intent of the libellants in the transaction. The request of the firm of Baetjer & De Vertu that the libellants would pay the bond for their account, and the assurance of the libellants, in reply, that the business of the Acme would receive their best attention when she should arrive, were not inconsistent with an advance with all the security which a lien on the vessel for reimbursement would furnish. The libellants were, therefore, in a situation to be governed by circumstances appearing on the arrival of the vessel; and it is testified that the master then proposed an advance for account of the vessel and owners. The libellants testify, that, in making the advance, they considered the responsibility of the vessel a sufficient security, and that she was bound for advances made under the circumstances above stated, and that it was not their intention to give credit personally to Baetjer & De Vertu. Their testimony states, with some particularity, their conviction, when they made the advances, that the vessel was liable therefor and their reliance thereon. They explain the manner in which the account was kept as due to press of business, and their unsuspecting confidence that no question of the liability of the vessel could arise.

I cannot say that, if there was any other ground for doubting the sincerity or veracity of these libellants, their explanation of the accounts would be very satisfactory; and yet it is easy to see that the account may have been kept and rendered in the name of Baetjer & De Vertu without any thought that they were thereby indicating an intent to rely upon them solely and waive a lien to which they were entitled if the advance was in fact made according to the request of the master and in reliance on the vessel itself. In judging of this, it is to be remembered, that they regarded Baetjer & De Vertu as the owners; and the case is, therefore, not like an advance made to a third person upon the request of that firm to make it on their account, followed by a charge in account to them, which would be so conclusive in favor of such third person, that he was neither expected nor bound to reimburse them, that, in the absence of proof of his own consent to be either primarily or secondarily liable, no declaration by the libellants of their intentions to look to him would be of any avail. Here, the parties requesting the advance being themselves owners, it is in harmony with the transaction to say, that the libellants were expected and intended to make the advance with all the incidental rights which appertain to advances made in a foreign port to relieve the pressing necessities of a vessel, when the master has no other means, by his own credit or that of the owners, to procure aid.

The mere fact that bills of exchange were drawn for the reimbursement of the libellants does not deprive them of their lien. This is true upon principles often adjudged at common law as well as in admiralty. Here, there is no such presumption as would arise if the responsibility of a third person had been given for the advance. The reimbursement must have been made in some mode, even though the lien upon the vessel was the libellants' reliance. Why should it not have been by paying their drafts drawn on the owners? See The Barque Chusan, [Case No. 2,717,] and cases there cited; The James Guy, [Id. 7,195,] affirmed 9 Wall. [76 U. S.] 758. Nor has the form of the account rendered been deemed conclusive. See The St. Catherine, 3 Hagg. Adm. 250. The case of The Grapeshot, 9 Wall. [76 U. S.] 129, is instructive in its bearing on the principles involved in this branch of the case; but it leaves the question whether, in fact, the advances were made on the credit of the vessel, as a question of fact, to be determined upon all the evidence.

My conclusion is not reached without great doubt. Nevertheless, upon all the proofs, I cannot resist a conviction here, that the master of the vessel and the libellants both of them regarded the loan as made upon the credit of the vessel and her owners. In giving weight to the oral testimony of the libellants, I am not violating the rule that written contracts cannot be altered or varied by parol evidence. The writings here have not necessarily the legal effect to bind the libellants to look to Baetjer & De Vertu. If that was their necessary operation, the rule would, no doubt, apply. But they may have appropriate meaning and effect consistently with the creation and continuance of the lien which the libellants assert.

If the doubts I feel were greater than they are, I should have great satisfaction, nevertheless, in the undeniable fact, that it is due to the advances made by the libellants that anything is saved to the claimant as mortgagee; and, if the case were to be disposed of upon those ideas of what is fair between the former and the latter which the ordinary mind deems equity, the libellants should be first paid.

The decree should award payment to the libellants of the amount due to them, as ascertained and awarded in the district court, with their costs in that court, and payment of the residue of the proceeds of sale to the claimant, without costs to either party on the appeal to this court.