WITTIG (UNITED STATES v.). See Case No. 16,748.

## Case No. 17,922.

### The W. J. WALSH.

[5 Ben. 72.] [1]

District Court, E. D. New York. March, 1871.

#### TOWAGE—JURISDICTION—LIEN.

1. A lien exists upon a canal-boat, for towage services rendered to her in the harbor of New York, which an admiralty court has jurisdiction to enforce.

2. What is a maritime contract, considered.

[Cited in Lands v. Cargo of Coal, 4 Fed. 480; The Wilmington, 48 Fed. 567.]

In admiralty.

BENEDICT, District Judge. This is a proceeding in rem to recover of the canal-boat W. J. Walsh the amount of several towing bills due the owner of the steam-tug G. H. Starbuck, for the towage by that tug of the canal-boat, on several trips from Williamsburgh, in this district, to Elizabethport, in the state of New Jersey. The performance of the service is admitted, and the amount demanded is conceded to be due. But it is set up that the services mentioned in the libel were not performed on the high seas; that the W. J. Walsh is not a sea-going craft, but a canal-boat, without masts, sails, rigging, or anchor; that she has no means of propulsion, and can only move or be moved by power not belonging or appertaining to her, and is serviceable only by being towed by steam power; by reason whereof, it is contended that this is not a case of admiralty and maritime jurisdiction.

These facts, stated in the libel and answer, are admitted, and the case is to be disposed of upon the question raised thereby. There is no room to contend that the towage contracts set up in the libel are not maritime contracts. A maritime contract in law, as now understood, is any contract which necessarily is appurtenant to navigation, such as the transportation of passengers or freight on navigable waters—or the navigation of vessels on such waters—or supplying the necessities of vessels used on such waters. A contract to furnish the motive power to a vessel so used is of the same class. It appertains to navigation, in the strictest sense, and is as distinctly maritime in character as a contract to steer the boat, or to carry cargo in her. The steamboats which tow the boats and barges, by means of which commerce between New Jersey and New York is transacted, are as much engaged in navigation as are the boats in which the cargoes are placed; and it is all not only navigation, but commerce among the states. Indeed, the contract in question contains almost all the features formerly considered necessary in a maritime contract, under a much narrower view of the jurisdiction than at present prevails. I am, therefore, at a loss for any ground upon which it can be held that here is not a maritime contract. That there is a lien is equally clear. This contract being made for the benefit of the vessel, and necessary to enable her to perform her natural functions, binds the vessel. This is the general rule of the maritime law; and the reasons of the rule are fully applicable to such contracts as the present, for nothing is more necessary to such a vessel as this than that she should, at all times and everywhere, carry

---

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

with her a credit which will procure for her a motive power. This she secures by the implied lien upon her bottom which the law creates in favor of any one rendering that service; and she can secure it, practically, in no other way. As to the idea that the form of the boat, or her incapacity to navigate the broad ocean, or her want of motive power within herself, can make any difference in her rights and liabilities on such a contract, I have nothing to add to the remarks made in the case of The Kate Tremaine [Case No. 7,622].

Let a decree be entered in favor of the libellant for the amount demanded in the libel.