## THE GRACIE MAY.

### CARPENTER v. RITSCHER et al.

(Circuit Court of Appeals, Second Circuit. February 18, 1896.)

MARITIME LIENS—SUPPLIES.

Grocers in Jersey City furnished supplies for three seasons to a small pleasure yacht, on the order of her reputed owner, a man without property and generally "short of ready money," who lived in New York, and who controlled and navigated her entirely alone. He was accustomed to pay the bills for one season at the beginning of the next season. In May, 1893, he ordered supplies as usual, and continued to order until the autumn. They knew little of him, except as disclosed in these dealings. *Held* that, under these circumstances, the application of the rule in relation to the presumption of the necessity of the credit of the vessel for supplies furnished in a foreign port on the order of a master would be a strained one, but that, the material men having testified that the goods were sold upon the credit of the vessel, the circumstances corroborated their testimony, and indicated that they relied, in part at least, on the credit of the yacht, and their claim should be enforced against her.

Appeal from the District Court of the United States for the Southern District of New York.

This was a libel by Peter C. Ritscher and others against the yacht Gracie May (Philip Carpenter, claimant), to recover the sum of $106.57, with interest and costs, for supplies furnished on board said yacht. The district court made a decree against the yacht, and the claimant appealed.

Mark Ash, for libelants.

Philip Carpenter, pro se.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge. Prior to July, 1890, George M. Rollins, then of New York City, owned the Gracie May, a pleasure yacht of about 30 feet in length and of about 5 tons burden. He was engaged in a number of electrical enterprises, and in the formation of car trusts, but he had no property, and was generally "short of ready money." He owed the claimant, who was his law-

yer, and whom he frequently consulted, and with whose family he and his family were on intimate terms, quite a large bill, and in July, 1890, offered to let him (Mr. Carpenter) have the yacht in payment of the bill up to that time. To this proposition Mr. Carpenter assented, and, a few days after, took formal possession of the boat, and, with Mr. Rollins, sailed in her on the Sound. She was thereafter left in Mr. Rollins' care and apparent sole control, at the Jersey City Yacht Club House. He was a member of this club, and during the summer seasons sailed the boat frequently upon short excursions, in neighboring waters. He managed her alone, without sailing master or crew. For three or four years before May, 1893, Rollins was in the habit of buying the necessary supplies of provisions for these occasional trips from the libelants, Peter C. Ritscher & Co., grocers in Jersey City, who had a shop near the water, and whose business it was to supply vessels. They supposed that Rollins owned the boat, knew that he was the only person who was managing her, and delivered the goods on board of her as they were purchased. Rollins was in the habit of paying his preceding bill at the beginning of each season, and on May 27, 1893, paid the previous bill, ordered a bill of $9.84, said, "Let the bill run for the season as previously," and thereafter purchased supplies from time to time until October 7, 1893, when the entire account, which was exclusively for necessary supplies for the boat, amounted to $108.57. He died March 4, 1894, without any property, and the bill is still unpaid. The account was kept exclusively in the libelants' day book. The items were generally charged to "Rollins"; occasionally to "Rollins. Yacht Gracie May"; and once to "Gracie May." A bill was sent by mail to Rollins in the autumn of 1893, which was made out to "Gracie May and Owners." The libelants testified that they gave credit to the yacht for the amount of the bill.

The libelants' counsel place their case upon the fact that they furnished necessary supplies to a vessel in a foreign port, upon the sole order of the master, in the absence of the owners, and that, under such a state of facts, the presumption is that there was a necessity for the credit of the vessel. The supplies were furnished upon the order of the reputed owner, who was also master and crew, and who was the only person who apparently had any connection with the boat. The application, to a case of this sort, of the rule respecting a lien for repairs and supplies furnished in a foreign port, upon the order of the master, would be a strained one. The rule had its origin in necessities of commerce, and to apply it to the case of supplies furnished to this tiny pleasure craft upon the order of the person who seemed to be the owner, and who was amusing himself with its management, is irrational. The question of credit must depend upon the facts and the probabilities, without the aid of technical presumptions. The material men were grocers, whose special business it was to supply vessels. The reputed owner and the purchaser lived, at the time, in Brooklyn, and was without property. The libelants had no other

business with him than to furnish his boat, and apparently knew very little, if anything, about him. They knew that he had paid his bills annually, and had the bearing of a gentleman, and they were willing to sell him goods. The careless way in which the account was kept throws very little light on the question of credit. They testify that they relied upon the boat, but this bare statement would not satisfy the mind unless it was corroborated by the surrounding circumstances and probabilities. It is difficult to believe that these material men, whose business it was to furnish goods to vessels, and whose sole business with Rollins was to supply the yacht with stores, were placing their exclusive reliance for payment upon a comparative stranger, who, during the summer season, made his occasional calls in behalf of his yacht which lay at the wharf. Credit, but not exclusive credit, was given to Rollins, whose appearance and annual return and annual payment of bills had gained for him the belief that he would continue the same course; but credit was also given to the visible property within their sight.

The decree of the district court is affirmed, with interest and costs.