## THE GOLDEN ROD.

(Circuit Court of Appeals, Second Circuit. January 30, 1907.)

### No. 41.

**1. MARITIME LIENS—SUPPLIES—VESSEL IN POSSESSION OF CONTRACT PURCHASER.**

For the purpose of determining the validity of a maritime lien for supplies furnished to a vessel while she is in the possession of a purchaser under a contract of conditional sale, the vessel should be considered as though in the possession pro hac vice of a charterer.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Maritime Liens, §§ 4–6, 26.]

**2. SAME—HOME PORT.**

Hoboken, N. J., is not the home port of a vessel whose owner resides in New York City, but a foreign port as relates to supplies there furnished her.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Maritime Liens, §§ 8, 9.]

**3. SAME—STATE STATUTE—SCOPE.**

A state statute giving the right to a lien for supplies furnished vessels is applicable only to domestic vessels of the state and a lien cannot be obtained thereunder on a foreign vessel.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Maritime Liens, §§ 24, 25, 27.]

**4. SAME—LIEN UNDER GENERAL MARITIME LAW—RELIANCE ON CREDIT OF VESSEL.**

To sustain a claim for a lien under the general maritime law for supplies furnished to a vessel in a foreign port, it must be shown that the credit of the vessel was properly relied on, and no lien can be obtained

where the claimant knew that the vessel was in possession of a charterer or contract purchaser who was bound to furnish and pay for all supplies, or where he was put upon inquiry as to the terms of such a contract.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Maritime Liens, § 12.

Maritime liens for supplies and services, presumption as to credit to vessel, see note to The George Dumois, 15 C. C. A. 679.]

Appeal from the District Court of the United States for the Southern District of New York.

Garrard Glenn, Herbert Barry, Earle L. Beatty, Morton G. Bogue, and Davies, Stone & Auerbach, for appellant.

Herbert Green and Wilcox & Green, for appellee.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

LACOMBE, Circuit Judge. The yacht was owned by Watt, who made a contract of sale with one Durlacher May 18, 1905. This contract provided that "Watt shall sell and Durlacher shall buy the said yacht Golden Rod, etc., for $22,000." payable in nine monthly installments, beginning July 1, 1905, and that "concurrently with the execution of this agreement Watt shall execute a bill of sale, * * * which shall not be delivered to Durlacher until the entire purchase price shall have been paid, * * * and in the meantime said bill of sale shall remain in escrow in the hands of A. P. Bliven." It was further provided that upon signing of the agreement and the effecting of insurance Watt should deliver possession to Durlacher. Durlacher covenanted to keep the yacht in as good condition as when delivered to him, and that he would make no alterations or changes in hull or machinery without the consent of Watt or his authorized representative, and at Durlacher's own expense, and further engaged to furnish a bond to protect against any liens for seaman's wages, repairs, supplies, etc. It was further provided that until full payment Watt should keep Bliven on board the yacht as his designated representative. Durlacher took possession while the yacht was out of commission in the Erie Basin, and subsequently appointed one Ludlow captain. A similar contract was before the court in The H. C. Grady (D. C.) 87 Fed. 232, and it was held that, when a question as to maritime lien arises, the vessel should be considered as if she were in the possession pro hac vice of a charterer to whom the owner had temporarily turned her over. In this view of the law governing the case we fully concur.

The coal was furnished in Hoboken, N. J. The owner resided in New York City. The supplies were therefore furnished, not in her home port, but in a foreign port. We so held in The Havana, 64 Fed. 496, 12 C. C. A. 361, and our attention is called to no authority questioning the correctness of that decision.

The contention of the appellant is that it obtained a lien under the statute of New Jersey, 2 Gen. St. N. J. p. 1966. The Supreme Court of the United States, while holding that it is competent for the states to create such liens for necessaries furnished to domestic vessels, said, "The right to extend these liens to foreign vessels in any case is open to grave doubt." The Roanoke, 189 U. S. 194, 23 Sup. Ct.

491, 47 L. Ed. 770. In The Electron, 74 Fed. 689, 21 C. C. A. 12, that question was before this court, but not passed upon because we had already certified it to the Supreme Court in The Kate, 164 U. S. 458, 17 Sup. Ct. 135, 41 L. Ed. 512. Although the cause thus certified was disposed of on other grounds, the expression of opinion above quoted from The Roanoke sufficiently indicates the principles to be applied by the inferior courts in such cases. The Golden Rod, being in a foreign port, was not affected by the provisions as to maritime lien contained in the New Jersey statute.

In the court below it was insisted that, if Hoboken were held to be a foreign port, libelant nevertheless obtained a lien for the supplies under the general maritime law; and such a claim is, we understand, still made on this appeal. To sustain such a claim it is necessary to show that the credit of the ship was properly relied upon by the person furnishing the supplies. In The Kate, 164 U. S. 458, 17 Sup. Ct. 135, 41 L. Ed. 512, it was held that, if the libelant knew that the vessel was being operated under a charter which provided that the charterer should furnish and pay for all needed coal, he could not maintain a lien under maritime law. And in The Valencia, 165 U. S. 264, 17 Sup. Ct. 323, 41 L. Ed. 710, the same court further held that if the circumstances attending the transaction put the libelants upon inquiry as to the terms and existence of such charter party, "but they chose to shut their eyes and make no inquiry touching these matters," they acquired no lien, even though they "delivered the coal in the belief that the vessel would be responsible for the value of such coal." The application of the rule thus laid down disposes of all question as to general maritime lien in this cause. It is quite apparent from the evidence that the master did not order the coal, and that before it was actually furnished the representatives of the libelant were advised that the yacht was under charter, or had been "bought on the installment plan," as the captain expressed it, but they made no effort to inform themselves as to the terms of the agreement under which she was in the possession of Durlacher instead of Watt. Under these circumstances no lien was obtained.

The decree of the District Court is affirmed, with interest and costs.