## THE WILLIAM P. DONNELLY.

## THE SANDY HOOK.

(District Court, W. D. New York. August 6, 1907.)

1. MARITIME LIENS—STATUTORY LIENS—SUPPLIES FURNISHED TO DOMESTIC VESSELS.

A lien on a domestic vessel for supplies furnished in her home port, given by Laws N. Y. 1897, pp. 526, 527, c. 418, §§ 30–32, as amended by Laws 1904, p. 494, c. 246, may be enforced in a federal court; but such lien will not attach in the absence of proof that credit was given to the vessel, and the rule is not altered by the fact that the vessel was under charter or in the possession of a prospective purchaser.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Maritime Liens, §§ 30, 111.

For supplies and services, presumption as to credit to vessel, see note to The George Dumois, 15 C. C. A. 679.]

2. SAME—SUPPLIES FURNISHED ON CREDIT OF VESSEL—EVIDENCE.

The testimony of one furnishing supplies for a vessel in her home port that they were furnished on the credit of the vessel is not of controlling weight, unless it is corroborated by other competent evidence; nor is the fact that they were charged on the books against the purchaser and the vessel of great weight.

3. SAME—BURDEN OF PROOF.

There is no presumption that the supplies furnished to a vessel on order of a charterer at its place of residence were so furnished on the credit of the vessel; but such fact must be affirmatively proved by evidence showing that tnere was a mutual understanding to that effect.

4. SAME—EVIDENCE CONSIDERED.

Libelants furnished supplies to vessels on the orders of a contracting corporation of the same port engaged in dredging work to which the vessels were chartered for the season under charters requiring the charterer to furnish all supplies and to return the vessels free from liens. It did not appear that libelants knew of the charters or made any inquiry in respect to the ownership of the vessels. The supplies were charged on the books to the corporation and the vessel to which they were furnished, and libelants testified that they were furnished on the credit of the vessels. From time to time they settled with the charterer, sometimes taking its notes for the balance due. The vessels were domestic vessels registered in the same port. The charterer having been adjudged bankrupt, libelants filed claims for liens under Laws N. Y. 1897, pp. 526, 527, c. 418, §§ 30–32, as amended by Laws 1904, p. 494, c. 246, and brought suit to enforce such liens. *Held,* that the evidence was not sufficient to show a mutual agreement or understanding pledging the credit of the vessels, nor to entitle libelants to a lien thereon.

In Admiralty. Suit to establish and enforce a lien for supplies.

Clinton & Clinton, for libelants.

Love & Keating, for claimant.

HAZEL, District Judge. The libel was filed in this cause to recover the sum of $356.64 for supplies furnished the tugboat William P. Donnelly at the port of Buffalo, N. Y., during the season of navigation on the Great Lakes for the year 1904. Reliance is placed upon the statute of the state of New York (Laws 1897, pp. 526, 527, c. 418, §§ 30–32, as amended by chapter 246, p. 494, Laws 1904), which provides for liens upon vessels for supplies and materials furnished

and for work done in the repair or equipping of domestic vessels at their home port. That a valid lien upon a domestic vessel filed under the above statute is enforceable in admiralty is clearly settled by the authorities. The Lottawanna, 21 Wall. 558, 22 L. Ed. 654; The J. E. Rumbell, 149 U. S. 1, 13 Sup. Ct. 498, 37 L. Ed. 345. Both sides concede that according to decisions controlling upon this court a valid lien will not attach in the absence of proof that credit was given to the ship. This rule applies equally to liens enforceable in admiralty under the general maritime law and under state statute, and such rule is not altered by reason of the fact that the vessel proceeded against is under charter or in the possession of a prospective purchaser. The Golden Rod, 151 Fed. 6–8, 80 C. C. A. 246.

The claimant contends that the supplies were furnished on the credit of the Donnelly Contracting Company, and not of the vessel. In so far as material, the evidence in this case shows that the supplies in question were delivered by libelants pursuant to directions received by them over the telephone from an employé of the charterer, the Donnelly Contracting Company. It was customary for libelants to each month deliver itemized statements for groceries and supplies furnished to the tugboat and to other vessels chartered by the Donnelly Contracting Company, and at different times promissory notes were taken for the total amount due them. On July 12 and September 9, 1904, promissory notes were taken to evidence the debt, which said notes were surrendered at the trial, and the amount of the debt representing deliveries of supplies to the tug Donnelly is now sought to be recovered herein. Indeed, the course of business for some time prior to the indebtedness in question was to take notes from the Donnelly Contracting Company for the amount of supplies furnished to vessels chartered by it. The Donnelly Contracting Company was a domestic corporation, and at the time the debt was incurred was engaged in the business of dredging at the port of Buffalo, N. Y., where libelants were also engaged in transacting the business of grocers. The tugboat in question had painted on her stern the corporate name of the charterer, and she was enrolled at Buffalo, N. Y., in the name of William P. Donnelly, who was the treasurer of the corporation. But it is not claimed that libelants made any inquiries in relation to the enrollment, or that they in any manner were induced to give credit to the vessel by the distinguishing name or mark upon her stern. They were not informed of the fact that the vessel was chartered by the Donnelly Contracting Company, and at the time the supplies were furnished they had no knowledge in relation thereto. In the month of November, 1904, the charterer was declared bankrupt, and thereupon the local lien in the form required by the statute was filed in the office of the clerk of Erie county. The proofs show that under the terms of an oral charter party the charterer was to pay all the expenses for the navigation of the tugboat and return her "free and clear at the end of the season." Libelants testified that the supplies were furnished on the credit of the vessel. Such testimony, however, is not entitled to controlling weight, unless it is corroborated by other competent evidence of the surrounding circumstances. The Gracie May, 72 Fed. 283, 18 C.

C. A. 559; The Acme, 7 Blatchf. 366, Fed. Cas. No. 28; Kelly v. Pittsburgh, Fed. Cas. No. 7,674. Nor is the evidence that the supplies were charged against the Donnelly Contracting Company and the tugboat on the books of the libelants entitled to great weight. The Samuel Marshall, 54 Fed. 396, 4 C. C. A. 385.

Upon the above facts the libelants did not in my opinion obtain a lien on the vessel for the supplies furnished and not paid for. It is clear that, if libelants had made inquiries regarding the ownership of the tugboat, they would have learned that she was chartered to the Donnelly Contracting Company and used in its business of dredging for the season of 1904. In The Valencia v. Ziegler, 165 U. S. 264, 17 Sup. Ct. 323, 41 L. Ed. 710, the Supreme Court substantially held that a person supplying goods to a vessel or repairing her on the order of a charterer who was obliged under the charter party to pay for such supplies or repairs cannot acquire a maritime lien "if [to quote from the syllabus] the circumstances of the transaction put him upon inquiry as to the existence and terms of such charter party, and he fails to make the inquiry, and chooses to act on a mere belief that the vessel will be liable for his claim." So, in the case at bar, the bare assertion by libelants that they parted with the supplies on the credit of the vessel, or that they believed the boat would be liable for groceries delivered in the absence of an understanding as to her actual liability, is not thought sufficient to bind her. That in The Valencia a maritime lien in a foreign port was asserted, while here we are dealing with a lien arising under a local statute for supplies furnished in the home port is not of material significance as applied to the elicited facts.

The enunciated principle is applicable to the proofs, and would seem to apply to both maritime liens and state liens for supplies furnished the vessel, as may be assumed from the approval by the court of the decision in the case of The Samuel Marshall, supra, where a similar local lien was considered, and where the limitations of a maritime lien were read into it. In The Golden Rod, supra, cited by both proctors in support of their respective contentions, the elicited facts fairly indicate that credit was given the vessel. The repairs were ordered by the agent of the owner, and were performed in the presence of the master, who substantially pledged the credit of the boat. Here the case is devoid of any testimony from which the inference would be warranted that the vessel was regarded as the responsible element for the value of the groceries furnished. On the contrary, the transaction is susceptible of the inference that the minds of the parties failed to meet upon an intention to hold the vessel responsible. Cuddy v. Clement, 113 Fed. 454, 51 C. C. A. 288; The Kalorama, 10 Wall. 204, 19 L. Ed. 914. It may be true that the libelants intended to sell their goods on the credit of the vessel as testified by them; but the intention to trust the vessel must spring from the acts express or implied of both parties. The mere act of charging the supplies to the Donnelly Contracting Company and the vessel upon the bills or monthly statements delivered to the contracting company is insufficient, standing alone, to justify the reasonable inference that there was a mutual understanding to give credit to the vessel.

Libelants contend, citing The Vigilant (C. C. A.) 151 Fed. 747, that the presumption of law is that the goods were delivered to the vessel upon her credit, and accordingly the state lien will be enforced by this court, unless such presumption is removed or overcome by the evidential facts. The case cited would seem to favor the rule adopted in various prior adjudications, namely: The Iris, 100 Fed. 104, 40 C. C. A. 301; The Underwriter (D. C.) 119 Fed. 713; The Alvira (D. C.) 63 Fed. 144. But, on the other hand, equally well reasoned adjudications, including a decision in this circuit, enunciate a different principle. In The Electron, 74 Fed. 689, 21 C. C. A. 12, Judge Shipman based his reasoning upon the authority of the Supreme Court in the Lottawanna Case, from which he quotes the following:

"Of course, this modification of the rule cannot avail where no lien exists; but where one does exist, no matter by what law, it removes all obstacles to a proceeding in rem, if credit is given to the vessel."

Commenting upon this quotation, he says:

"If full force is given to the last clause of the sentence, it is an implication that no proceeding in rem can be had against domestic ships, if no credit had been given to the vessel, and that such credit necessarily preceded any lien which could be recognized by an admiralty court."

From this language it is fair to presume that no such presumption arises from the mere delivery of goods to the ship as is here claimed. The Circuit Court of Appeals for the Second Circuit, in The Golden Rod, speaking of its prior decision in The Electron, supra, says:

"We find no reason for modifying our former opinion, which seems to be in accord with the views of the Supreme Court in The J. E. Rumbell."

And in Alaska Company v. Chamberlain, 116 Fed. 600, 54 C. C. A. 56, the Circuit Court of Appeals for the Ninth Circuit broadly held that, where supplies have been furnished to the charterer at the place of his residence, the presumption arises that credit was given to him, and not to the vessel; and in that case The Valencia, supra, was cited as an authority in support of the enunciated principle. See, also, The Westover (D. C.) 76 Fed. 381; The Lighter, 57 Fed. 664, 6 C. C. A. 493; The Rosalie (D. C.) 75 Fed. 29; The Norman (D. C.) 6 Fed. 406.

The evident weight of the authorities, as I read them, constrains me to hold that libelants have not affirmatively shown that they trusted the vessel for the supplies furnished by them on the order of the charterer, and therefore the libel should be dismissed with costs.

### The Sandy Hook.

In the libel filed against the tug Sandy Hook the amount of supplies furnished amounted to $486.29. The evidence considered in the case against the tugboat William P. Donnelly also applies here, and in fact both cases were tried and submitted upon substantially the same record.

For the reasons stated in the foregoing decision, the libel should be dismissed, with costs.