## MACK S. S. CO. v. THOMPSON.

(Circuit Court of Appeals, Sixth Circuit. February 8, 1910.)

No. 1,992.

1. ADMIRALTY (§ 29*)—JURISDICTION IN REM—LIEN GIVEN BY STATE STATUTE.

Where an admiralty court has jurisdiction of a maritime claim, as a charge for towage under a contract with the owner, express or implied, the libelant may as a general rule proceed against the owner in personam, and if he has a lien upon the vessel towed, given either by the general rules of the maritime law or by a local statute, he may proceed in rem.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 289, 296; Dec. Dig. § 29.*]

2. ADMIRALTY (§ 16*)—JURISDICTION IN REM—LIEN GIVEN BY STATE STATUTE.

Under Comp. Laws Mich. 1897, § 10,789, which gives a lien on watercraft constructed, or being constructed, for towage, a charge for towage of a new vessel being built in that state and completed, except for her fittings, whether regarded as a completed vessel or not, may be enforced by a proceeding in rem against her in an admiralty court, where the contract was with the owner, who was a resident of another state; the contract for towage being maritime.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 23, 24, 193; Dec. Dig. § 16.*

Admiralty jurisdiction to enforce liens created by state laws, see note to The Electron, 21 C. C. A. 21.]

3. MARITIME LIENS (§ 57*)—STATUTORY LIENS—WHEN ENFORCEABLE IN ADMIRALTY.

A lien for repairs, towage, etc., given by the local law, to be enforceable in a court of admiralty, must be reconcilable with the principles of the maritime law, and notwithstanding general language of the statute, in the absence of express agreement, the work must have been done under circumstances which under such law would raise a presumption that it was on the credit of the vessel, and not of the owner. A contract for towage made with a resident owner would not raise such a presumption, but it would be otherwise if the owner were a nonresident.

[Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. § 96; Dec. Dig. § 57.*]

4. ADMIRALTY (§ 1*)—MARITIME LAW—EFFECT OF STATE LEGISLATION.

The maritime law of the United States subsists as an entirety as the subject of federal jurisprudence, and is to be administered by the federal courts without impairment by state legislation.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 1-6; Dec. Dig. § 1.*]

5. MARITIME LIENS (§ 57*)—STATUTORY LIENS—ENFORCEMENT IN ADMIRALTY.

Liens created by state laws on vessels are not of themselves merely subjects of the maritime law, but, because such a lien is a right or interest inherent in a principal subject of a maritime nature of which the admiralty takes jurisdiction, the court will recognize the lien as an incident of the debt it is administering, and give to the owner of the claim the benefit of it.

[Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. § 96; Dec. Dig. § 57.*]

6. TOWAGE (§ 6*)—LIABILITY FOR SERVICE—CONSTRUCTION OF AGREEMENT.

A shipbuilding company completed a vessel under a contract with the exception of her fitting, and she was left at its wharf in a stream through the winter. Payment had been made so that title to the vessel had passed. In the spring, fearing damage from flood, the company wrote the owner, asking permission to have her moved out of the stream, which was granted.

*Held* that, under the circumstances and as the service was for its protection, such consent might properly be construed as an agreement that the towage should be at the owner's expense.

[Ed. Note.—For other cases, see Towage, Cent. Dig. § 5; Dec. Dig. § 6.*]

Appeal from the District Court of the United States for the Eastern District of Michigan.

Suit in rem in admiralty by Robert P. Thompson, doing business as the Thompson Tug Company, against the steamer F. B. Squire, the Mack Steamship Company, claimant. Decree for libelant, and claimant appeals. Affirmed.

G. H. Eichelberger, for appellant.

Before SEVERENS and WARRINGTON, Circuit Judges, and KNAPPEN, District Judge.

SEVERENS, Circuit Judge. The Jenks Shipbuilding Company under contract with the appellant, the Mack Steamship Company, built during the season of 1903 the steamship F. B. Squire at its works on Black river, an affluent of the St. Clair river. The vessel had been substantially completed, but had not been taken out. She had been launched and inspected, but whether a license had been issued does not appear. Her engines and boilers had been put in, and she had been completed, except that the "fittings," as they are called in the record, furniture and the like, which the contractors had agreed to supply, had not yet been put on board. These were incidentals which it was customary to put in when the vessel was about to leave. Otherwise she was ready to go. By the terms of the contract, the vessel was to be delivered at the shipbuilding company's works on Black river. She had been paid for, and a bill of sale had been given by the contractor to the owners. But she stayed over winter at the dock of the contractor, and was remaining there, when, on March 12, 1904, the Jenks Shipbuilding Company, being apprehensive of danger to the vessel from the spring freshets, sent the following letter to the managing owner:

"Port Huron, March 12, 1904.

"Mr. Charles O. Jenkins, Cleveland, Ohio.

"Dear Sir: Thinking it might be advisable to move the 'F. B. Squire' out into the river, I ask for your consent. We thought perhaps it might be advisable to have her moved out the first of the week. We haven't had any high water here at all, and we don't know whether we will have, but there is a great deal of water up in the country, and it is liable to come down with a sudden rush and cause some damage. I wish you would wire us on receipt of this if we shall have her moved.

"Yours very truly,

"The Jenks Shipbuilding Company, by A. O. Carpenter."

On March 15th the managing owner telegraphed the following reply:

"Cleveland, Ohio, March 15, 1904.

"The Jenks Shipbuilding Company, Port Huron, Michigan.

"Shift 'Squire' as per your letter of 12th.          Charles O. Jenkins."

Black river is a small and rather tortuous stream, and it was customary to take large vessels like the Squire (which was 430 feet long)

out by using tugs, one at each end, to manage their course down the stream. The Jenks Shipbuilding Company on getting the telegram procured tugs of the libelant, which towed the Squire out of Black river and down the St. Clair to a dock called Miller's Coal Dock, where she was laid up. The owner of the tugs presented his bill to the appellant for the towage, and, payment being refused, he filed this libel against the ship to enforce a lien he claimed to have. The owner answered, setting up his claim of title to the steamer, and averring that:

"The said Jenks Shipbuilding Company, for their own convenience and economy, and at their own instigation and acting in their own behalf, caused said vessel to be moved from their shipyard, where the vessel was under contract to be delivered to the Mack Steamship Company, to a place on the Detroit river, and the said libelant at no time acted at the request of the Mack Steamship Company or its agent."

The proofs were taken in open court, and a decree was awarded to the libelant.

The principal grounds on which the appellant relies are, first, that there was no admiralty jurisdiction; and, second, that the towage was done at the instance and in behalf of the Jenks Shipbuilding Company, and not for the appellant.

It is admitted, and cannot be doubted, that a towage contract is a maritime contract. 1 Conk. Adm. 28, note; The May Queen, Spr. 558, Fed. Cas. No. 9,360; Porter v. The Sea Witch, 3 Woods, 75, Fed. Cas. No. 11,289; The W. J. Walsh, 5 Ben. 72, Fed. Cas. No. 17,922. And, if the contract was made by or on behalf of the appellant and the appellant resided in another state (questions we shall take up later), we suppose it is not doubted that a libel in personam would be a proper remedy, in admiralty against the owner. That seems to be admitted, if the facts are as above supposed. But the stress of the appellant's contention is that the "Squire" was not a completed vessel, and therefore was not a subject for a maritime lien. And, if the vessel was not so far complete as to come within the range of a general maritime lien, it must be admitted that, if there were nothing more, this libel, which is one in rem, would fail for the lack of any lien upon the vessel. But a Michigan statute supplies this lack. Section 2 of chapter 298 of Compiled Laws of 1897 gives a lien upon watercraft constructed or being constructed for, among other things, "towage."

Now, it is the well-settled law of this court and elsewhere that where the admiralty court has jurisdiction of a maritime claim, in this case a charge for towage, under contract with the owner, express or implied, the libelant may as a general rule proceed against the owner in personam; and, if he has a lien upon the vessel towed given either by the general rules of the maritime law or by a local statute, he may proceed in rem. The admiralty court will recognize and enforce by its own procedure a lien given by a local statute for the security of the claim where the provision of the local law does not antagonize or derogate from the principles of the maritime law. This subject was given much consideration and the rules upon which the admiralty court will enforce, as incident to a maritime claim, liens given by state laws, laid down in the case of The Samuel Marshall decided by this court in 1893, 54 Fed. 396, 4 C. C. A. 385. One of those rules was the

one last above stated. And to the like effect are The Lottawana, 21 Wall. 558, 22 L. Ed. 654, The J. E. Rumbell, 148 U. S. 1, 13 Sup. Ct. 498, 37 L. Ed. 345, and The Glide, 167 U. S. 606, 17 Sup. Ct. 930, 42 L. Ed. 296. "But the District Courts," it was said in The Lottawana, "having jurisdiction of the contract as a maritime one may enforce liens given for its security, even where created by the state laws."

The court below seems to have put its decision upon the ground that the Squire was a completed vessel ready to proceed in its business of navigation on being supplied with certain incidentals which were not a substantive part of the ship. We are not disposed to controvert that conclusion. But the condition of the Squire puts her upon debatable ground, and we prefer to rest our own decision upon the presence of the local statute. The libel is wide enough to enable the court to grant relief upon either ground.

A question is made as to whether towing was done upon the credit of the owner, or is a proper charge against the vessel. If the owner had been a resident of the state, so that it might or should be presumed that the tug company looked to him for payment, it would be open to the appellant to insist that the vessel could not be properly charged. And the decisions on that subject have settled the law to that effect. The testimony is not quite positive on that point. It was not made a ground of defense by the answer, nor does it appear to have been raised upon the trial. Mr. C. O. Spencer was "managing owner" of the Mack Steamship Company and had his office and place of business at Cleveland, Ohio, and the correspondence in this business was conducted by him from that place. It is not shown where the other owners reside. If there was any ground in fact for claiming the benefit of this objection, we should have expected some allegation or proof to sustain it. The objection rests upon an exception to the general rule. We think it should be held that the owners were resident in Ohio. It seems necessary to settle this question and to find ground for settling it in this way; for, if the owner has not a foreign residence, there could be no presumption that a credit for the services was given to the vessel, and the giving credit to the vessel is a condition to the lien which the libelant seeks to enforce, as was held by this court in the case of The Samuel Marshall, 54 Fed. 396, 4 C. C. A. 385. We notice that the Court of Appeals for the First Circuit in the case of The Iris, 100 Fed. 104, at page 112, 40 C. C. A. 301, speaks of the statement made in the opinion of this court in the case of The Samuel Marshall to the effect "that a local lien can be enforced in admiralty only when credit is given the vessel, and that in this respect there is the same limitation as with reference to supplies furnished a ship in a foreign port" as a dictum. And the Court of Appeals for the Third Circuit assigns to it a similar character. With great respect to those able courts, we think this is a misapprehension. It was, in fact, made a decisive point in the case. Judge Taft, who wrote the opinion, had said that the charterer stood in the place of the owner, that the charterer resided at the same place with the libelant, and that the supplies had been furnished at that port. If the local statute had the effect to give a lien without regard to the presence or absence of the owner and

these were the only facts to be considered, the decree must have been for the libelant. The whole drift and purpose of that part of the opinion was to demonstrate that, notwithstanding the general language of the local statute, the effect which should be given to it in the court of admiralty was the creation of a lien which should be reconcilable with the principles of the maritime law; in other words, that the court would not surrender a general rule of the admiralty law which it is bound to administer, and substitute for it a local statute. But it would enforce a lien given by such statute in cases where it is not inconsistent with the maritime law, and only to that extent, in short, it would subordinate the statute to its own imperative rules. It is true there was another ground stated on which the court might have rested its decision. But it thought fit to rest it also upon the former ground. If the first declaration was a dictum, by the same token the second was also, and the case is void of authority. But we have not so considered it. In the case of Davidson v. Baldwin, 79 Fed. 95, 24 C. C. A. 453, Judge Lurton, who delivered the opinion of the court, cited that case as authority for the doctrine which it was supposed to have established for the court. The rule in respect to the giving credit whether to the vessel or its owner rests upon a presumption arising upon the evidence. And it has long been axiomatic that the known presence of the owner at the place where supplies are furnished or other assistance given to the vessel, whether at home or abroad, would give rise to a presumption that a personal credit was given to him, and this presumption would prevail in the absence of proof to the contrary. A lien upon the vessel would be given only where there was either a necessity or an agreement for it. If the local statute be construed to be without restriction as to the credit intended, it would give to a creditor at the home port of the owner an advantage superior to that of one who furnishes supplies or other assistance at a foreign port, a result the very opposite to the general policy of the maritime law. A local statute which should give a lien absolutely and without regard to this rule, which rests upon a fundamental principle of the maritime law and is born of the necessities of commerce, would be in effect to make a new law for the admiralty. If this can be done in respect to one thing, it may be done in many, and in the end the admiralty jurisprudence might be honeycombed, if not displaced, by a mass of heterogeneous local statutes. Local statutes provide different rules in respect to the rank of liens, a matter of serious importance. A court of admiralty would abandon its own jurisdiction, if it should enforce them when they were in conflict with the rules of maritime law. And, if this be so, it must be because of the predominant authority of the admiralty court throughout the domain of the maritime law, which will not hearken to the ordinances of state legislation. In general these local statutes consist of these three features: The creation of a lien, the prescription of the procedure, and the order of the distribution of the proceeds. Beyond question, the admiralty court will not adopt the procedure, nor will it proceed in the distribution in the order prescribed by the statute, unless, as rarely happens, that order is the same as that prescribed by the maritime law. For the same reason and by the same

authority, it will disregard any quality of the lien which is not in harmony with its own maxims. A contract for the supply of necessaries in the home port of the owner is a contract of a maritime nature, and although it would be presumed, in the absence of evidence to the contrary, that credit was not intended to be given to the vessel, yet evidence of an express agreement would be sufficient to attach a lien. Inasmuch as the jurisdiction is taken solely because of the maritime nature of the subject, it is both logical and reasonable to say that the lien, which is an inherent right therein, should partake of the same qualities as the subject, upon the analogy that prevails in other like relations in other departments of the law, as in the case of a mortgage or other security given for the payment of a debt and which attends upon it, into whosesoever hands the debt may pass.

We think the maritime law subsists as an entirety as the subject of federal jurisprudence, and is to be administered by the federal courts without impairment by state legislation. If changes are to be made in it, it must be done by federal authority. These reasons would persuade us to follow the rule affirmed by this court in the case of The Samuel Marshall, even if we were not bound by the authority of that decision. The rule was not inaugurated, nor was it first announced, by the opinion in that case. On the contrary, it had already been stated and applied by Mr. Justice Matthews, with whom the circuit judge concurred, in the case of The Guiding Star, 18 Fed. 263, a case pending in this circuit, where the court upon a very lucid statement of the rule declined to rank the lien given by the local law, according to the position it would have under such law, and determined its rank by the rule of the maritime law, and reversed the decree of the lower court, which was at variance with it.

Liens created by state laws on ships and other water craft are not of themselves merely subjects of the maritime law. But because such a lien is a right or interest inherent in a principal subject of a maritime nature of which the admiralty takes jurisdiction, a jus in re, as Mr. Justice Curtis characterized it in the Young Mechanic, the court will recognize this advantage as an incident of the debt or claim it is administering, and will give to the owner of the claim the benefit of it. The court treats the claim as one improved by the lien. And upon another special ground where a surplus has arisen after a sale for the satisfaction of the claim, the court will administer it; this ex necessitate. It has the fund and must dispose of it. This is a part of and properly belongs to the duty the court is discharging.

The rule affirmed in The Guiding Star and in The Samuel Marshall has been recognized in the Second Circuit by Judge Brown in the case of The Advance (D. C.) 60 Fed. 766, and by the Court of Appeals in The Electron, 74 Fed. 689, 21 C. C. A. 12, and by Judge Hazel in The William P. Donnelly (D. C.) 156 Fed. 302. The ruling in The Electron was reaffirmed in The Golden Rod, 151 Fed. 9, 80 C. C. A. 246. In the Ninth Circuit it had already been applied by Judge Hoffman in The Columbus, 5 Sawy. 487, Fed. Cas. No. 3,044, and it was confirmed subsequently by the Circuit Court of Appeals in The Lighters, 57 Fed. 664, 6 C. C. A. 493, and by Judge Morrow in The Templar (D. C.)

59 Fed. 203, and The Alvira (D. C.) 63 Fed. 144. In the Fourth Circuit, Judge Brawley, in the case of The Sappho (D. C.) 89 Fed. 366, adhered to the same doctrine. In the Fifth Circuit, Judge Toulmin signified his concurrence in The Lena Mowbray (D. C.) 71 Fed. 720, and The City of Camden (D. C.) 147 Fed. 847. In the Seventh Circuit Judge Seaman agreed in The Westover (D. C.) 76 Fed. 381. To the contrary are in the First Circuit The Iris, 100 Fed. 104, 40 C. C. A. 301, by the Circuit Court of Appeals, and in the Third Circuit, he Vigilant, 151 Fed. 747, 81 C. C. A. 371, by the Circuit Court of Appeals. And in both the First and Third Circuits there have been decisions of the lower courts to the same effect. It is much to be regretted that there should be such a conflict of opinion, but our own duty seems clear.

In respect to the objection that the towage was not requested by the appellant, it is to be inferred that the court thought that in the light of the circumstances the correspondence should be construed as indicating that it was to be done for the benefit of the appellant and therefore presumably to be paid for by it. The vessel was to be delivered at the shipbuilding company's wharf; and the title had already passed. If it had remained there, it would have been at the owner's risk. We are inclined to concur in the construction of the agreement which the court put upon it.

The decree of the District Court will be affirmed, with costs.