## THE STROHN.

### THE CLAYT.

(District Court, E. D. Michigan, N. D. September 19, 1911.)

Nos. 124, 130.

1. MARITIME LIENS (§ 5*)—SUPPLIES FURNISHED IN HOME PORT.

One furnishing coal to tugs in their home port and where all the parties reside is not presumed to give credit to the vessels, and the fact alone that the coal was charged on the books of the seller to the vessel which received it is not sufficient to entitle him to a lien therefor.

[Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. §§ 7–9; Dec. Dig. § 5.*

Maritime lien for supplies and services, presumption as to credit of vessel, see note to The George Dumois, 15 C. C. A. 679.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. MARITIME LIENS (§ 5*)—SUPPLIES FURNISHED TO PURCHASER UNDER CONTRACT.

One furnishing coal to tugs in their home port, in possession of a purchaser under a contract requiring him to pay for all supplies, and which reserved title in the seller and entitled her to retake possession on default in payment, with knowledge of the sale, but without making any inquiry as to its terms, cannot impose a lien on the vessels, after they have been retaken by the vendor.

[Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. §§ 7-9; Dec. Dig. § 5.*]

In Admiralty. Suits by W. & H. McArthur Company, Limited, against the tug Strohn and the tug Clayt, respectively; Marion S. Pickands, claimant. Decrees for respondent.

C. S. Reilley, for libelant.

Gillett & Clark, for claimant and respondents.

ANGELL, District Judge. Libelant between July 6 and October 29, 1906, furnished certain coal for the use of the tugs. In March, 1909, libels were filed against them.

The tugs were harbor tugs, and from 1905 to 1909 were running in and out of the harbor of Cheboygan, where libelant did business and furnished the coal. Claimant had the legal title to the tugs. In 1905 she entered into a contract to sell them to one Marquette, reserving the right to retake them for breach of the agreement. This contract was modified and extended in 1907, and, as modified, was in force till about January, 1909. At that time claimant took possession of the tugs after declaring forfeited the contract of sale.

Marquette in 1905 and 1906, and for years before that time, had been in the employ of libelant as a bookkeeper, and had his office on or near its dock. One Horn was in charge of the coal business of libelant on its dock. After Marquette got possession of the tugs under his contract with Mrs. Pickands, they were operated by him and one or two other men, doing business as partners under the name of the Cheboygan Towing Company or the Cheboygan Towing & Wrecking Company.

Horn was told by Marquette that he had bought the tugs from Mrs. Pickands and that they would need coal. McArthur, the managing agent of libelant at the time the libel was filed, supposed that there was a contract of purchase between the tug owner and the Cheboygan Towing & Wrecking Company, did not know the exact situation, and never took the trouble to find out. After he took charge of the company's affairs, in 1907 or 1908, he mailed statements against the tugs to the Cheboygan Towing Company. Libelant ceased to sell coal in 1907.

The only evidence discoverable to show that credit for this coal was given to the tugs is that in the book of original entry kept on the dock containing entries of sales, this coal is charged, as taken, against the tug taking it. It appears from this book that prior to July 6, 1906, similar entries had been made. It is apparent that the coal delivered prior to that date had been paid for by Marquette or the towing com-

pany, and by letter written in the winter of 1908 and 1909 (Exhibit E) Marquette assured Mrs. Pickands' attorney that there were no past-due bills against the tugs.

It is not entirely clear from the record that any demand on Mrs. Pickands was made before filing the libel; but, if any was made, it was not till long after the coal was delivered. Meantime libelant was pressing for payment from Marquette or the Cheboygan Towing Company. Within a few weeks after Mrs. Pickands took possession of the tugs, libelant filed this libel. Marquette and his associates and Mrs. Pickands all lived in or near Cheboygan, from which port the tugs hailed. Libelant had there its main office.

[1] Under the circumstances above detailed there is no presumption that credit is given to a vessel. The evidence fails to show that the credit, when the sales were made, was given the tugs. The mere entry in the book is not in itself sufficient. The Samuel Marshall (D. C.) 49 Fed. 754; Id., 54 Fed. 396, 4 C. C. A. 385; The Mack S. S. Co. v. Thompson, 176 Fed. 499, 100 C. C. A. 57; The Golden Rod, 151 Fed. 8, 80 C. C. A. 248. In spite of the criticisms upon the decision in The Marshall, found in cases cited by libelant, it is clearly affirmed in the Mack Case, above cited, and is binding on this court.

[2] It is plain that libelant, if it did not know, was at least under the duty to inquire as to, the obligations of Marquette under his agreement with Mrs. Pickands, provided it sought to hold the tugs as against her. Under the agreement in force, fairly construed, it was Marquette's duty to pay the coal bills. If Marquette had held the tugs under a charter providing that he should pay their running expenses, but containing no clause authorizing him to acquire title to them, and libelant was chargeable with knowledge of the terms of the charter, the tugs could not then have been held for the coal. The Kate, 164 U. S. 458, 17 Sup. Ct. 135, 41 L. Ed. 512; The Valencia, 165 U. S. 264, 17 Sup. Ct. 323, 41 L. Ed. 710.

The fact that he was in possession under a contract of sale, and not an ordinary charter, could not, without manifest injustice, make a different rule applicable here. The tugs should be considered as if in the possession of a charterer (The Golden Rod, 151 Fed. 6, 80 C. C. A. 246; The H. C. Grady [D. C.] 87 Fed. 232), in spite of the contrary rule laid down in The Iris, 100 Fed. 104, 40 C. C. A. 301, relied on by libelant.

For the reasons stated, and without passing upon other matters discussed by counsel, the libel should be dismissed.